UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **YSLETA DEL SUR PUEBLO**, *a federally recognized sovereign Indian tribe*, | § § § § | |
| *Plaintiff*, | § | |
| v. | § | EP-17-CV-00162-DCG |
| **CITY OF EL PASO**, | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM ORDER

Presently before the Court is Plaintiff Ysleta del Sur Pueblo's ("Pueblo") "Motion to Amend the Judgment and For Leave to File an Amended Complaint" (ECF No. 97) ("Motion"), filed on February 12, 2020. Therein, the Pueblo requests the Court to amend the judgment entered on January 15, 2020 (ECF No. 95), and to grant leave for the Pueblo to file an Amended Complaint that "cures the subject matter jurisdiction concerns set forth in the Court's Memorandum Opinion and Order (ECF [No]. 94)." ECF No. 97. For the reasons that follow, the Court **DENIES** the Pueblo's Motion.

### I. BACKGROUND

Plaintiff Ysleta Del Sur Pueblo is a federally recognized Indian Tribe.[1] In May 2017, the Pueblo brought a declaratory judgment action, pursuant to 28 U.S.C. §§ 1331, 1362, and 2201. It sought judicial confirmation of the Pueblo's title to 111.73 acres of real property ("Property") encompassed by what is described as "the Ysleta Grant";[2] the Pueblo alleged that it is the owner

---

[1] Verified Compl. for Declaratory J. Confirming Title to Real Prop. ¶ 1 [hereinafter "Complaint"], ECF No. 1.

[2] *Id.* ¶ 5.

of the Property under the 1751 Spanish Land Grant.³ It also asked the Court to enjoin Defendant City of El Paso ("City") from claiming any estate, right, title, or interest in or to the Property.⁴

On July 29, 2019, the City filed its motion for summary judgment. *See* City's MSJ, ECF No. 56. That same day, the Pueblo also filed its own motion for summary judgment. *See* Pueblo's MSJ, ECF No. 57. On January 15, 2019, the Court granted in part and denied in part the City's motion for summary judgment, and dismissed the case for lack of subject-matter jurisdiction. Mem. Op. and Order, ECF No. 94. On February 12, 2020, the Pueblo filed the instant motion to amend the Court's judgment and for leave to file an amended complaint.

## II. DISCUSSION

### A. Applicable Standard.

The parties first contest by which standard the Court should evaluate the Motion. The Pueblo argues that the Court should analyze its motion under the Federal Rule of Civil Procedure 15(a) standard. Mot. at 4. In contrast, the City argues that the Court should analyze first whether the Pueblo's motion satisfies Federal Rule of Civil Procedure 59(e)'s standard, and if so, only then should the Court apply "the more generous" Rule 15(a) standard. Resp. in Opp. at 2, ECF No. 98. After careful review of applicable case law, the Court agrees with the City.

Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The language of this rule evinces a bias in favor of granting leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 59 (5th Cir. 2004) (internal quotes and citation omitted). By extension, a court may not deny a party leave to amend based on a judicial whim. *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Absent a 'substantial reason' such as undue delay,

---

³ *Id.* ¶¶ 27–29.

⁴ *Id.* at 6.

bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (internal quotes and citation omitted). "Stated differently, district courts must entertain a presumption in favor of granting parties leave to amend." *Id.*

But "[w]hile [Federal Rule of Civil Procedure] 15(a) endows a district court with 'virtually unlimited discretion' to allow amendments before entry of judgment, that discretion narrows considerably after entry of judgment." *Benson v. St. Joseph Regl. Health Ctr.*, 575 F.3d 542, 550 (5th Cir. 2009) (citing *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000)). Thus, "[a] post-judgment amendment is permissible only when the judgment is vacated pursuant to Federal Rule of Civil Procedure 59 or 60." *Id.* (citing *Vielma*, 218 F.3d at 468). Simply put, once judgment has been entered, a district court has no power to allow an amendment to the complaint because there is no complaint left to amend. *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 628 (1st Cir. 2000).

After entering judgment pursuant to Federal Rule of Civil Procedure 58, a court may properly deny leave to amend "where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling." *Benson*, 575 F.3d at 550 (quoting *Briddle v. Scott*, 63 F.3d 364, 380 (5th Cir. 1995)). Therefore, the Court will address whether the Pueblo's motion satisfies the Rule 59(e) standard and will only apply the Rule 15(a) standard if altering or amending the judgment is warranted.

**B. The Pueblo's Motion Does Not Satisfy the Rule 59(e) Standard.**

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*,

303 F.3d 571, 581 (5th Cir. 2002)). Altering or amending a judgment after its entry is "an extraordinary remedy that should be used sparingly. *Id.* at 479. For that reason, Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (alterations omitted)). Relief under the rule is also appropriate when there has been an intervening change in the controlling law. *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

But Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Ship. Co. v. Baker*, 554 U.S. 471, 486 n. 5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–28 (2d ed. 1995)). As such, Rule 59(e) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered before the entry of judgment. *Naquin*, 817 F.3d at 240 n.4 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)); *see also EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) (noting that a Rule 59(e) motion is not a vehicle for parties to correct poor strategic choices) (citing *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp.2d 48, 77 (D.D.C. 2013)).

Here, the Pueblo's motion does not address the Rule 59(e) standard. It fails to assert whether the Court committed manifest error of fact or law[5], whether newly discovered evidence

---

[5] At most, the Pueblo appears to imply in a footnote that the Court committed a manifest error of law because the Court does have subject matter jurisdiction for its non-aboriginal title claim because "[c]onfirmation of the Pueblo's Spanish grant is not required [because] . . . [congressional confirmation is only a quitclaim from the United States, which does not affect titles as between non-federal parties." Mot. at 7, n. 2. The Pueblo seems to overlook the Court's discussion in its "Memorandum Opinion and Order" (ECF No. 94) about the Supreme Court's holdings in *Tameling v. U.S. Freehold & Emigration*

exists, or whether there has been an intervening change in the controlling law. Instead, the Pueblo only argues that its proposed Amended Complaint cures its claims of lack of subject-matter jurisdiction and contends that its motion satisfies the Rule 15(a) standard. Notably, the Pueblo's proposed Amended Complaint alters its prior Complaint by alleging that the nature of its title to the Property is aboriginal—not non-aboriginal as it had originally pleaded[6]—and includes two new claims: (1) a violation of the Indian Non-Intercourse Act, 25 U.S.C. § 177; and (2) a 42 U.S.C. § 1983 claim based on an alleged deprivation of rights, privileges, or immunities. Mot., Ex. A at 11–15. Further, the proposed Amended Complaint requests relief not only in the form of declaratory judgment, but also now requests injunctive relief, attorneys' fees, and compensatory damages. *Id.* at 17.

But as the City correctly points out, a review of the Pueblo's proposed Amended Complaint indicates its allegations could have been offered well before the Court's entry of judgment. As the City argues, it appears from the record that "[w]hen the Pueblo's experienced Indian law counsel filed this action in May 2017, they would have known full well from their prior litigations how to plead an aboriginal title claim . . . and certainly must have understood how to present claims for alleged violation of the Indian Non-Intercourse Act."[7] Resp. in Opp. at

---

*Co.*, 93 U.S. 644 (1876), and *Astiazaran v. Santa Rita Land & Mining Co.*, 148 U.S. 80 (1893). Mem. Op. and Order at 15–16.

[6] As noted in the Court's Memorandum Opinion and Order, the Pueblo's claim to the Property involved non-aboriginal occupancy rights "because the source of its alleged rights derive[d] from a treaty by a prior sovereign [(namely, the 1751 Spanish Land Grant)], not from historical evidence of the Pueblo's long-standing physical possession of the Property 'from time immemorial' to the time the colonists arrived." Mem. Op. and Order at 12.

[7] The Court particularly notes that the Pueblo's counsel here, Mr. Randolph H. Barnhouse, from Johnson, Barnhouse, & Keegan LLP in Albuquerque, New Mexico, and Mr. Thomas E. Luebben, Jr., from Luebben, Johnson, & Barnhouse LLP in Los Ranchos de Albuquerque, New Mexico, were both also counsel for the Pueblo of Jemez in its aboriginal title claim against the United States in *Pueblo de Jemez v. United States*, CIV 12-0800 RB/RHS, 2013 WL 11325229 (D.N.M. Sept. 24, 2013), *rev'd and remanded*, 790 F.3d 1143 (10th Cir. 2015).

3. Indeed, in its filings throughout this litigation, the Pueblo appears to concede, through its assertions, that it knew that both aboriginal Indian title and the Non-Intercourse Act were—in the Pueblo's own words—"critical aspect[s] of the case" well before the Court entered judgment. Mot. at 8.

For instance, in its own motion, the Pueblo states that "[b]oth parties understood restrictions on alienation to be a critical aspect of the case, and specifically[,] application of the Indian Non-Intercourse Act", that the City "thereafter was granted leave of Court to file an Amended Answer addressing this central issue", and even that the parties conducted discovery on it. *Id.* In a footnote, the Pueblo also states that "[t]he City conducted discovery on aboriginal Indian title" and that "it retained outside counsel with experience in aboriginal rights and restrictions on alienation of tribal lands." *Id.* at 8 n.5.

Moreover, in its "Response in Opposition to [the City's] Motion for Leave to Amend Its Answer" (ECF No. 37), filed on February 5, 2019, the Pueblo argued that the City's proposed amendments to its Answer were futile and meritless. ECF No. 37 at 10. In particular, the Pueblo argued that the City's proposed amendments in ¶ 38[8] (affirmative defense regarding the Pueblo's actual, exclusive and continuous use of the Property) and ¶¶ 45–46[9] (affirmative defenses

---

[8] Specifically, paragraph 38 asserts that:

38. The Plaintiff has never had actual, exclusive and continuous use and occupancy of the Property. *Sac and Fox Tribe of Indians of Oklahoma v. United States*, 161 Ct. Cl. 189 (1963). "This use and occupancy requirement is measured in accordance with the way of life, habits, customs and usages of the Indians who are its users and occupiers." *Native Village of Eyak v. Blank*, 688 F.3d 619 (9th Cir. 2012).3

Amended Answer ¶ 38, ECF No. 43.

[9] Specifically, paragraph 45 and 46 assert that:

45. Plaintiff's claims must be dismissed because the lands at issue were never subject to any restraints on alienation imposed by the federal Non-Intercourse Act, 25 U.S.C. § 177.

regarding the lack of any restraints on alienation of the Property) were futile because ¶ 38 "[p]ertain[ed] to aboriginal Indian title, not title derived from a Spanish land grant" and ¶¶ 45–46 were about "[p]urported conveyances of the Pueblo's 1751 grant lands . . . [that] were void ab initio because such conveyances violated the Federal Nonintercourse Act[.]" *Id.* at 10–11 n.5. The Pueblo's own assertions here strongly suggest that the Pueblo could have raised the new allegations from its proposed Amended Complaint prior to Court's entry of judgment. *Benson*, 575 F.3d at 550.

Hence, the Court believes that the Pueblo is attempting to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Baker*, 554 U.S. at 486 n.5. Further, when the Pueblo's own assertions are viewed together with its failure to seek leave to amend its Complaint before the entry of judgment also suggest that the Pueblo "chose to stand by its . . . Complaint and risk an adverse ruling from the [Court]." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

**C. The Pueblo Cannot Get Relief Under 28 U.S.C. § 1653.**

Finally, since the Court dismissed its original Complaint for lack of subject-matter jurisdiction, the Pueblo contends that the Court should grant it leave to amend its complaint because 28 U.S.C. § 1653 allows "[d]efective allegations of jurisdiction [to] be amended, upon terms, in the trial or appellate courts." Mot. at 5 (quoting 28 U.S.C. § 1653). In response, the City avers that the Pueblo's argument fails as § 1653 does not provide grounds to first set aside

---

> The history and treatment of those lands demonstrate that the Property and other lands were available at all times for sale and purchase without restriction.
>
> 46. Plaintiff's claims must be dismissed because the lands at issue were not subject to any restraints on alienation arising from the State of Texas' confirmation of the grant of lands "to the inhabitants of the Town of Ysleta in 1854."

*Id.* ¶¶ 45–46.

the Court's judgment and then to grant the Pueblo leave to amend because the statute only addresses technical defects in the allegations of jurisdiction. Resp. in Opp. at 4, n.4.

The Supreme Court has previously noted that "§ 1653 speaks of amending '*allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (emphasis in original). In other words, because a federal complaint would normally be dismissed if it fails to state "the grounds upon which the court's jurisdiction depends," then, a court must allow amendment to best serve the interests of justice in those cases "where jurisdiction is clear from the record." *Carlton v. Baww, Inc.*, 751 F.2d 781, 789 (5th Cir. 1985) (citing Fed. R. Civ. P. 8(a); 5 C. Wright &A. Miller, Federal Practice and Procedure: Civil § 1214). For that reason, "even if liberally construed, [§ 1653] does not allow a plaintiff to amend its complaint to substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not." *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998) (citing *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983)).

As noted *supra*, the Pueblo here is attempting to substitute its original non-aboriginal title claim for a new trespass claim that alleges that its title to the Property is aboriginal. With this attempt, it appears that the Pueblo intends to provide the Court with subject-matter jurisdiction because "Indian [aboriginal] title is a matter of federal law." *Oneida Indian Nation of N.Y. State v. Oneida Cty., New York,* 414 U.S. 661, 663 (1974). With a similar objective in mind, the Pueblo also includes two completely new claims based on federal statutes, which the Pueblo could have asserted previously but chose not to do so. Thus, the Pueblo's proposed Amended Complaint is not meant to cure incorrect allegations or statements about jurisdiction, but instead,

to cure "defects in the jurisdictional facts themselves" because the *lack* of jurisdiction was clear from the record when the Court entered judgment. *Newman-Green*, 490 U.S. at 831. Therefore, the Court concludes that, even if § 1653 were to provide the Pueblo relief by first setting aside the Court's judgment, the statute would still not allow the Pueblo to amend its complaint.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Ysleta del Sur Pueblo's "Motion to Amend the Judgment and For Leave to File an Amended Complaint" (ECF No. 97) is **DENIED**.

**So ORDERED and SIGNED this 24th day of March 2020.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE